UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
 PAULA THORBY,

                         Plaintiff,

   -against-

 CUSHMAN & WAKEFIELD, INC.,
 STANLEY TELFORD, individually, and
 DANIELLE DUTCHER, individually.

                        Defendants.
--------------------------------------------------------X

Civil Case No: 18-cv-9073

Plaintiff Demands a
Trial by Jury

**COMPLAINT**

      Plaintiff, PAULA THORBY (hereinafter referred to as "Plaintiff" or "THORBY"), by and through her counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants CUSHMAN & WAKEFIELD, INC. (hereinafter referred to as "CW"), STANLEY TELFORD (hereinafter referred to as "TELFORD"), and DANIELLE DUTCHER (hereinafter referred to as "DUTCHER") (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

**NATURE OF CASE**

      1.     This action arises out of the unlawful discrimination, hostile work environment, intimidation, and retaliation of Defendants against Plaintiff on the basis of her sex/pregnancy and disability.

      2.     Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, the Pregnancy Discrimination Act of 1978 ("PDA"), the New York State Executive Law, and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to United Mine Workers of *America v. Gibbs*, 383

U.S. 715 (1966) and 28 U.S.C. § 1367, seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated against by her employer on the basis of her sex/pregnancy and disability, together with hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction based on 42 U.S.C § 2000e-5(f)(3) and 28 U.S.C § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.      Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and the ADA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5.       Venue is proper in this district pursuant to 20 U.S.C. §1391(b) because Defendants are located in this judicial district and a substantial part of the events which give rise to the claims herein occurred within the Southern District of New York.

6.      On February 2, 2018, Plaintiff filed her charge with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 520-2018-01497.

7.       On or around August 22, 2018, Plaintiff received the EEOC's Right to Sue Letter in reference to her EEOC charge.

8.      Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC's Right to Sue Letter.

## PARTIES

9.      At all times material, Plaintiff is an individual woman who is a resident of the State of New York, County of New York.

10.      At all times material, Defendant CW is a business entity authorized to do business in the State of New York, with a principal place of business located at 1290 Avenue of the Americas, New York, New York 10104.

11.      At all times material, Defendant CW employed Plaintiff.

12.      At all material times, Defendant TELFORD was the Vice President of Talent Acquisition for Defendant CW.

13.      At all material times, Defendant TELFORD had supervisory authority over Plaintiff with respect to her employment. Defendant TELFORD held the power to hire and fire Plaintiff.

14.      At all material times, Defendant DUTCHER was the Manager of Talent Acquisition and Recruiting for Defendant CW.

15.      At all material times, Defendant DUTCHER had supervisory authority over Plaintiff with respect to her employment. Defendant DUTCHER held the power to hire and fire Plaintiff.

16.      At all times material, Defendants meet the definition of an employer under all applicable state and local statutes.

## MATERIAL FACTS

12.     In or around April 2013, Defendant CW hired Plaintiff as temporary contractor for a recruiter position.

13.     In or around September 2014, Defendant CW offered Plaintiff a permanent recruiter position due to Plaintiff's successful performance in this role, which she gladly accepted.

14.     In or around March 2016, Plaintiff voluntarily resigned from her position with Defendant CW.

15.     In or around June 2016, Plaintiff re-applied for the same recruiting position with Defendant CW.  However, Defendant CW informed Plaintiff that there were no longer any permanent recruiter positions available but assured Plaintiff that she would be re-hired as a temporary recruiter without benefits.  Defendant CW also agreed to pay Plaintiff the same salary she was previously earning.

16.     Defendant CW promised Plaintiff that her position would eventually become permanent. Based on Defendant CW's assurances, Plaintiff accepted the position and re-commenced her employment as a recruiter.

17.     Between June 2016 and April 2017, Plaintiff made numerous attempts to transition to a back into a permanent recruiter role with Defendant CW.

18.     In fact, Defendant CW's Director of Talent Acquisition, Julie Stone, who was Plaintiff's direct supervisor, repeatedly assured Plaintiff that she would soon be transitioned back into a permanent recruiter position with CW.

19.     In or around April 2017, Defendant TELFORD commenced his position as the Vice President of Talent Acquisition for Defendant CW.

4

20.     In or around May 2017, Plaintiff inquired to Defendant TELFORD about her employment status as a temporary recruiter and reiterated her desire to transfer into a permanent role.  In response, Defendant TELFORD reassured Plaintiff that she would be switched back to a permanent role "within the next 30-45 days."

21.     In or around June 2017, Plaintiff again approached Defendant TELFORD about the status of her temporary position.  TELFORD again provided Plaintiff with the same response and continued to inform Plaintiff "not to worry" and that it would "not be a problem" to move Plaintiff back into a permanent role.

22.     Then, in or around June 2017, Defendant CW hired Defendant DUTCHER as the Manager of Talent Acquisition and Recruiting.

23.     Around this same time, Plaintiff advised Defendant DUTCHER about her request to transfer back to a permanent role.  Defendant DUTCHER responded that she would move Plaintiff to a permanent role shortly.

24.     Then, in or around October 2017, Plaintiff informed Defendant DUTCHER that she was pregnant, to which DUTCHER inappropriately responded, "when are you due?"

25.     Shortly after Plaintiff informed Defendant DUTCHER that she was pregnant, DUTCHER demanded that Plaintiff come into the office 3-4 days per week. Plaintiff had previously worked remotely for Defendant CW.

26.     Notably, no other recruiters were asked to come in to the office and no valid business reason was offered for this sudden request, despite Plaintiff's long history of working remotely for Defendant CW.

27.     Defendant DUTCHER subjected Plaintiff to disparate treatment on the basis of her sex/pregnancy.

28.     In or around November 2017, Defendant CW began the hiring process for a permanent Senior Recruiter position in the New York office.  Defendant DUTCHER described the position as "more strategic due to exclusively recruiting senior level executives" and "focused exclusively on tri-state positions and accounts," both of which were already a primary focus of Plaintiff's current position with CW and which she excelled in.

29.     Plaintiff was fully qualified for this Senior Recruiter position and immediately expressed interest in this permanent position to Defendant DUTCHER.

30.     On or around November 27, 2017, Defendant DUTCHER and Defendant CW's Recruiting Manager, Shannon Anderson, interviewed Plaintiff for the Senior Recruiter position.

31.     On or around December 5, 2017, Defendant TELFORD held a second interview with Plaintiff.  During this interview, Defendant TELFORD praised Plaintiff's history of success at CW and informed Plaintiff, "you are the only candidate we are speaking with for this Senior Recruiter position."

32.     On or around December 18, 2017, Plaintiff was scheduled for a third interview with Defendant CW's Human Resources. The interview did not proceed as originally scheduled due to tardiness of the interviewers and Plaintiff was forced to stand, at four (4) months pregnant, for an extended period of time without anyone present to grant floor access until her interviewer arrived. Notably, only one of the three interviews proceeded as scheduled and the other two were summarily canceled by the interviewers.   Nonetheless, Plaintiff remained confident in her successful performance at CW and qualifications for the Senior Recruiter role.

33.     Then, in or around January 2, 2018, Plaintiff began to experience medical complications with her pregnancy and was diagnosed by her doctor with placenta previa, a temporary disability that put Plaintiff's pregnancy at high risk.

34.     On or around January 3, 2018, Plaintiff informed Defendant DUTCHER of her medical condition related to her pregnancy.

35.     On or around January 4, 2018, the following day, Defendant DUTCHER contacted Plaintiff by telephone and advised Plaintiff that Defendant CW had decided to hire an external candidate for the Senior Recruiter role.

36.     During this phone call, Defendant DUTCHER also informed Plaintiff that she would be kept in her temporary role with CW "indefinitely."

37.     Plaintiff was extremely taken aback by Defendant DUTCHER's revelation that Defendant CW had hired an external candidate, despite Plaintiff's qualifications and tenure of successful performance with CW.  Moreover, Defendants previously made repeated assurances to Plaintiff that she was the only candidate CW was considering for the position and that Plaintiff would be transitioned back in to a permanent position shortly.

38.     Notably, the external candidate hired by Defendant CW possessed no real estate recruiting experience and no human resources education background, two essential qualifications for the Senior Recruiter position.  On the contrary, Plaintiff unquestionably possessed these qualifications and excelled in these areas during her employment with CW.  Unlike Plaintiff, the external candidate hired by Defendant CW was not pregnant.

39.     During this phone conversation with Defendant DUTCHER, Plaintiff complained that Defendants had unlawfully discriminated against her by failing to promote her on the basis of her pregnancy and/or disability.

40.     Quite tellingly, Defendant DUTCHER summarily dismissed Plaintiff's complaint or workplace discrimination and failed to investigate Plaintiff's complaint.

41.     On or around January 5, 2018, after Defendant DUTCHER ignored Plaintiff's complaint of workplace discrimination, Plaintiff filed a formal written complaint on the basis of pregnancy discrimination, which she submitted through Defendant CW's Human Resources portal, EthicsPoint.

42.     Later that same day, Plaintiff received an email request for follow-up interview with CW's Compliance Director, AMY JUSTINIANO (hereinafter "JUSTINIANO").

43.     On or around January 8, 2018, Plaintiff spoke with Defendant CW's Compliance Department in response to her complaint of workplace discrimination.

44.     Later that same day, Defendant DUTCHER contacted Plaintiff out of the blue and informed Plaintiff she wanted to, "discuss improving your skills."

45.     Plaintiff had never had an issue with her performance at CW, prior to complaining about workplace discrimination. Defendant DUTCHER retaliated against Plaintiff for engaging in protected activity.

46.     On or around January 11, 2018, JUSTINIANO responded to Plaintiff's complaint of workplace discrimination with a finding of "no wrongdoing" and offered no other explanation or justification for this rushed decision.

47.     Plaintiff was astounded by the rapid conclusion of Defendant CW's purported investigation and utter disregard of her complaint of pregnancy and disability discrimination.

48.     Then, on or around January 12, 2018, Plaintiff received a phone call from JENNIFER SHIPS (hereinafter referred to as "SHIPS") of Defendant CW's Human Resources department. SHIPS advised Plaintiff that her current temporary recruiter role, "will end by the end of the year."

49.     Plaintiff was shocked by this sudden revelation, particularly since she had been continuously assured by Defendant DUTCHER that she would be moved to a permanent position and that her role with CW would continue "indefinitely."

50.     Plaintiff was distressed by such blatant retaliation by Defendants in response to Plaintiff's complaint of discrimination.

51.     On or around January 16, 2018, Defendant DUTCHER scheduled a meeting with Plaintiff about "improving skills." Defendant DUTCHER informed Plaintiff that she would be reporting to a new manager, SHANNON ANDERSON (hereinafter referred to as "ANDERSON"), and that Plaintiff would be removed from the accounts that she had been working on for years.

52.     The new role that Defendant DUTCHER assigned Plaintiff involved an entirely new client-base, which would entail recruiting for roles and skill-sets in which Plaintiff had limited to no experience in.   In fact, Plaintiff's new role would be focused on entry level and intern recruiting, which was indisputably a significant step down and a clear demotion in Plaintiff's career, since she had previously focused on mid to senior level recruiting.

53.     Defendant CW created a hostile work environment by strategically manipulating Plaintiff's work responsibilities in order to induce her resignation from CW.

54.     In or around April 2018, and in further retaliation for Plaintiff's complaints of workplace discrimination, Defendant CW substantially increased Plaintiff's workload without cause or explanation.   Specifically, whereas Plaintiff had previously been assigned to work on approximately fifteen (15) opening listings, Defendant CW now required Plaintiff to fill more than thirty-five (35) openings.

55.     Accordingly, on or about April 9, 2018, due to Plaintiff's high-risk pregnancy, Plaintiff requested a reasonable accommodation in the form of a reduced workload and provided Defendants with a doctor's note in support of her accommodation request.

56.     On or about April 10, 2018, in response to Plaintiff's request, Defendant CW demanded that Plaintiff provide additional information in support of her accommodation request.

57.     The following day, on or about April 10, 2018, Defendant CW revoked Plaintiff's LinkedIn Recruiter seat, a vital tool that enables Plaintiff to perform successfully in her role.

58.     On or about June 5, 2018, Plaintiff went out on maternity leave and was scheduled to return on August 6, 2018.  Plaintiff gave birth on June 5, 2018.

59.     In or around July 2018, the external candidate that Defendant CW had selected for the Senior Recruiting role (that Defendant CW had unreasonably failed to promote Plaintiff to) resigned suddenly without notice.  Accordingly, the position was again available and Defendant DUTCHER began accepting applications for the vacant position.

60.     Upon notice of the available Recruiting Team Lead position, Plaintiff immediately applied.  Plaintiff possessed all of the requisite qualifications for this role.

61.     On August 6, 2018, Plaintiff returned from maternity leave.

62.     On or about August 7, 2018, Defendant CW's Senior Corporate Recruiter, TANYA EDMOND, interviewed Plaintiff for the permanent recruiter role.

63.     The interview was promising and Defendant CW advised Plaintiff that she would soon be contacted by Defendant DUTCHER and Defendant TELFORD for a follow-up interview.

64.     However, neither Defendant DUTCHER nor Defendant TELFORD ever contacted Plaintiff to schedule a final interview.

65.     Then, in or around late August 2018, Defendant CW hired an external candidate to fill the permanent position.  Notably, Plaintiff was more qualified than the other candidate but Defendant CW yet again failed to promote Plaintiff because of her sex/pregnancy and in retaliation for her complaints of discrimination.

66.     Then, on or about September 10, 2018, Defendant CW informed Plaintiff that she would be terminated from her position, effective October 9, 2018.

67.     As a result of Defendant's discrimination, harassment, retaliation, and creation of a hostile work environment, Plaintiff continues to experienced extreme anxiety, which has negatively impacted her pregnancy and has caused medical complications. Moreover, Plaintiff has recently commenced mental health counseling due to the stress caused by Defendant's egregious conduct.

68.     As a result of Defendant CW's unlawful, harassing and discriminatory actions, Plaintiff is constantly fearful of her autonomy and well-being.

69.     As a result of Defendant CW's unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she began experiencing difficulty eating and sleeping, along with suffering from pregnancy complications.

70.     As a result of Defendant CW's unlawful and discriminatory actions, Plaintiff has endured unwarranted professional humiliation resulting in extreme emotional distress, depression, and extreme anxiety.

71.     As a result of Defendant CW's unlawful and discriminatory actions, Plaintiff will endure unwarranted financial hardships and irreparable damage to her professional reputation.

72.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which

such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

73.     As Defendant's actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

74.     The above are just some examples of the harassment, unlawful discrimination and retaliation to which Defendant subjected Plaintiff.

## CAUSES OF ACTION

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Against Defendant CW)

75.     Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

76.     Title VII states in relevant part as follows: "SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

77.     Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender.

78.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Against Defendant CW)

79.     Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

80.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

81.     Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendant.

82.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
### (Against Defendant CW)

83.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84.     Plaintiff claims Defendant violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

85.     SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such

individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

86.     Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

87.     Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his associated disability.

88.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(Against Defendant CW)**

89.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90.     SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

91.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
### (Against All Defendants)

92.     Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

93.     New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

94.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, disability and pregnancy related condition leading to Plaintiff's wrongful termination.

95.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

96.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION
FOR RETALIATION UNDER
NEW YORK STATE LAW**
**(Against All Defendants)**

97.     Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

98.     New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

99.     Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

100.    Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

**AS A SEVENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

101.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

102.    The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in

16

compensation or in terms, conditions or privileges of employment."

103.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her sex/gender.

104.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

105.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

106.    The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…."

107.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiffs' employer.

108.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

109.    Plaintiff repeats and re-alleges each and every allegation made in the above

paragraphs of this complaint as is fully set forth at length.

110.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

111.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

112.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR INTIMIDATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

113.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

114.    Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

115.    Defendants violated the above section as set forth herein and Plaintiff suffered numerous damages as a result.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR SUPERVISOR LIABILITY UNDER
### <u>THE NEW YORK CITY ADMINISTRATIVE CODE</u>
### (Against All Defendants)

116.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

117.   Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

118.   Defendants violated the above section as set forth herein and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action, and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
        October 3, 2018

                          DEREK SMITH LAW GROUP, PLLC
                          Attorneys for Plaintiff


By:   _____
                          Rachel Allen, Esq.
                          One Penn Plaza, Suite 4905
                          New York, New York 10119
                          (212) 587-0760